# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 0 1 2016

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 16mr558
)
#47 Jack Rabbit Hill Road )
Picuris Pueblo, Taos County, NM )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A".

located in the ___State and___ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1153, 113 (a)(3), 18 U.S.C. 1153, 113 (a)(6), & 18 U.S.C. 1153, 924(c) | Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Discharge of a Firearm During a Crime of Violence |

The application is based on these facts:

See Attachment C

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Peter D. Lahi, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 8/1/16

_____
Judge's signature

City and state: Albuquerque, NM

_____
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA    )
                            )
          VS.               )
                            )   Case No:_____
                            )
House No. 47, Jack Rabbit Hill
Picuris Pueblo, New Mexico, 87553
Manuel Archuleta Residence

AFFIDAVIT

1.      I am a Special Agent (SA) with the Bureau of Indian Affairs (BIA) assigned to the Northern Pueblos Agency, Ohkay Owingeh, New Mexico. My duties are to provide law enforcement services to the Eight Northern Indian Pueblos and other Indian Country Entities within the United States. My primary duties are investigating violations of the Major Crimes Act and Crimes under 18 USC 1152 and 1153, which occur on the reservations to which I am assigned. I have twenty years of total law enforcement experience with two different law enforcement entities. I have been with the Bureau of Indian Affairs, Office of Justice Services for seven years. I have completed the Criminal Investigation Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and the Basic Police Training Program with the United States Indian Police Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have extensive in-service and technical training in different aspects of Law Enforcement. Investigations of Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury and Discharge of a Firearm during a Crime of Violence are some of my responsibilities.

2.  Because this affidavit is being submitted for the purpose of securing a Search Warrant of the residence and vehicles located at No. 47 Jack Rabbit Hill, Picuris Pueblo, New Mexico, 87553, which is located within Indian Country, I have not included each and every fact known to me concerning this investigation. The information set forth in this affidavit is known to me as a result of my own investigation, or has been communicated to me by other law enforcement officers or agents.

3.  Victim -1 of this investigation has been identified as JOHN DOE, a Non-Indian. JOHN DOE has a year of birth of 1995. He will be referred to as JOHN DOE for the remainder of this affidavit.

4.  Witness -1 of this investigation has been identified as JANE DOE, a Non-Indian female. JANE DOE has a year of birth of 1994. She will be referred to as JANE DOE for the remainder of this affidavit.

5.  Suspect-1 is STEVEN "STEVIE" ARCHULETA, an Indian male and member of the Picuris Pueblo Indian Tribe. ARCHULETA has a year of birth of 1990 and will be referred to as STEVIE for the remainder of this affidavit.

6.  On July 17, 2016, at approximately 4:35p.m. Bureau of Indian Affairs (BIA) Police Officers (PO) Anthony GARCIA, Chasity CORIZ and Donald VIGIL were dispatched to #1378 State Road 75, Penasco, New Mexico, also known as the Picuris Smokes, in regards to a shooting. Picuris Smokes is a smoke shop, which is located within exterior boundaries of the Picuris Pueblo, which is Indian Country in the District of New Mexico. JOHN DOE was reported to have been shot in the leg with a single bullet exiting to the groin and had numerous shotgun "birdshot" wounds on his back. JOHN DOE was transported to Taos Holy Cross Hospital for his injuries. BIA Police

Officers secured the scene along with Taos County Sheriff's Office and the New Mexico State Police.

7. On this same date at approximately 5:03 p.m., I was contacted by PO GARCIA in regards to the shooting. I responded and arrived on scene at the Picuris Smokes on Picuris Pueblo at approximately 6:50 p.m. I was briefed by PO GARCIA. In addition, I viewed video surveillance provided by Picuris Smokes.

8. I observed in the surveillance footage, two male subjects. During the course of my investigation, I have since learned that the two males in the surveillance were STEVIE and BRIAN SHEMAYME. In the footage, I observed one of the males approaching a approaching a white colored Ford Mustang in a hostile manner. This male subject was identified as STEVIE by Picuris Pueblo Official C.Q, who was also present during the viewing. I also observed the Picuris Smokes security guard attempt to deescalate the situation by using his body as a barrier. JOHN DOE remained inside his vehicle and backed up and started to drive off heading eastbound on State Road 75. As JOHN DOE backed up, STEVIE picked up a large rock and threw it at the Ford Mustang, striking the back window. JOHN and JANE DOE pulled into the east side of the Picuris Smokes and exited the vehicle and were analyzing the damage to their car when a green sedan pulled up beside them. STEVIE then exited the green sedan and threw his hands up. STEVIE then taunted JOHN DOE. JOHN DOE then produced a handgun and pointed it directly at STEVIE. STEVIE then returned to his vehicle and they drove off heading west bound on State Road 75.

9. PO Vigil briefed me as what he learned about this incident. This contents of this information appear in paragraphs 9-11. PO Vigil said after the initial altercation

JOHN and JANE DOE pulled into the east parking lot of Picuris Smokes. JOHN and JANE DOE remained parked on the east side of the Picuris Smokes building. A short time later, STEVIE returned in the green sedan and drove by firing multiple shots at JOHN and JANE DOE, striking JOHN DOE in the leg, groin, and back. Bullets also struck JOHN DOE'S vehicle and the Picuris Smokes building. The suspect vehicle then turned around and as they drove by, STEVIE fired multiple shots again and headed westbound on State Road 75. JOHN DOE did discharge one (1) round in return, toward the suspect vehicle as he was being fired upon.

10. Innocent bystanders rushed to render aid to JOHN DOE. JOHN DOE made an utterance that STEVIE shot him. JOHN and JANE DOE are familiar with STEVIE and identified him as the shooter.

11. Paramedics arrived on scene and transported JOHN DOE to the Taos Holy Cross Hospital and was then airlifted to the University of New Mexico Hospital (UNMH) for his injuries. JOHN DOE'S injuries consisted of gunshot wounds to the leg and an exit wound to the groin area. JOHN DOE also suffered shotgun "birdshot" wounds to his back area.

12. On July 18, 2016, I went to interview JOHN DOE at UNMH, however he was incapacitated due to his injuries and I was not able to question him.

13. On July 19, 2016, I returned to interview JOHN DOE at UNMH. Present during the interview was also JANE DOE. JOHN DOE said he was involved in an altercation at the Picuris Smokes with STEVIE and another male who JOHN DOE identified as BRIAN. JOHN DOE left the west parking lot and STEVIE and BRIAN threw rocks at his vehicle, striking the back window. JOHN DOE pulled into the east

parking lot of Picuris Smokes building to assess the damage and call law enforcement. JOHN DOE stated that the driver of the green sedan drove to his location along with BRIAN and STEVIE. STEVIE then got out of the green sedan and started to taunt JOHN DOE. JOHN DOE said he felt in fear for his life and he produced a handgun and pointed it at STEVIE. STEVIE then got back into the vehicle and left. A short time later JANE DOE told JOHN DOE, "Here they come, here they come." The green sedan drove by and starting shooting at both of them. JOHN DOE said he turned to get back into the car and he felt the bullet hit his leg. JOHN DOE told JANE DOE, "I'm hit," and he tried to open the passenger door for her. JANE DOE said she was outside of the car and she ducked when the shooting started. JANE DOE said she saw two people in the backseat of the green sedan and identified STEVIE as being the shooter. JOHN DOE said he had one gunshot wound to the back of his leg, one gunshot wound to the groin and multiple birdshot pellets around his back and the back of his arm. JOHN DOE identified the driver of the green sedan as CHERYL ARCHULETA. During the course of my investigation, I have learned that STEVIE and CHERYL are related as siblings.

14. On July 21, 2016, BIA/ OJS Special Agents (SA) interviewed BRIAN SHEMAYME. The contents of the interview appear in paragraphs 14 - 19 below. BRIAN stated he was with CHERYL ARCHULETA and STEVEN (STEVIE) ARCHULETA on Sunday July 17, 2016. BRIAN stated he was with STEVIE and CHERYL when the drive by shooting occurred. BRIAN explained that he had consumed about two (2) pints of Jack Daniels whisky with STEVIE and CHERYL. BRIAN explained that all three were pretty "buzzed." BRIAN said while they were on the west side of the smoke shop, STEVIE recognized a vehicle, which belonged to JOHN DOE

and approached the vehicle in a hostile manner. BRIAN said STEVIE and JOHN DOE had a long-standing feud. BRIAN explained that STEVIE was retaliating for a fight that BRIAN and JOHN DOE were involved in the day before. According to BRIAN, JOHN DOE then attempted to leave the parking lot, and STEVIE and BRIAN picked up rocks and threw them through the back window of the JOHN DOE's vehicle.

15. According to BRIAN, JOHN DOE drove to the east side of the Picuris Smokes building and CHERYL followed by driving her vehicle to the east side. STEVIE then got out of the vehicle and approached JOHN DOE and wanted to fight. JOHN DOE pulled out a handgun and pointed it at STEVIE. STEVIE then backed off and got back into the vehicle. STEVIE, BRIAN, and CHERYL left in the vehicle. CHERYL was the driver.

16. BRIAN stated that CHERYL drove to her residence (located at P-8 Buffalo Trail) in Picuris Pueblo. STEVIE ran inside and armed himself with a firearm. BRIAN did not know what kind of gun was used, however BRIAN demonstrated to the BIA/ OJS Special Agent how STEVIE loaded the bullets into the side of the gun. BRIAN described the firearm to be some type of lever action gun with a stock.

17. According to BRIAN, STEVIE got back into the vehicle and CHERYL drove towards the smoke shop. BRIAN said he asked STEVIE what he was going to do. STEVIE replied, "Fuck him, He's not going to threaten me." BRIAN said STEVIE was sitting in the back seat alone, and he (BRIAN) was sitting in the front passenger seat.

18. BRIAN stated that CHERYL drove east and passed the Picuris Smokes building. CHERYL then suddenly drove into the east parking lot. BRIAN saw JOHN DOE standing outside his vehicle and as they passed. STEVIE then opened fire towards

JOHN DOE and his vehicle. CHERYL then turned the vehicle around and as they headed west, STEVIE once again shot the gun towards JOHN DOE and his vehicle. BRIAN said he saw JOHN DOE pointing a handgun at them but was not sure if JOHN DOE fired.

19. According to BRIAN, CHERYL sped off and headed back to Picuris Pueblo at a high rate of speed. BRIAN said he was freaked out at what had just occurred. CHERYL drove back to her uncle's residence located at No. 47 Jack Rabbit Hill in Picuris Pueblo. STEVIE gave the gun to his father, identified as EMMET ARCHULETA. STEVIE told EMMET to get rid of the shotgun for him.

20. During the course of my investigation, the residence located at No. 47 Jack Rabbit Hill Road, Picuris Pueblo, New Mexico is known to be owned by MANUEL ARCHULETA, who is STEVIE and CHERYL'S uncle and EMMET'S brother. EMMET, who is STEVIE and CHERYL'S father, resides with MANUEL at No. 47 Jack Rabbit Hill Road in Picuris Pueblo. The residence is a yellow in color stucco structure with a half pitched roof. The residence has a "Coyote fence made of uneven latias (Wooden posts) on the north side and a brown dog house with a pitched roof on the south side. In addition, there is an older model camper trailer parked on the south side. A "Beware of Dog" sign is posted over the No. 47 address marker on the middle pillar of the front porch." The location of the residence is within the exterior boundaries of the Picuris Pueblo Indian reservation, which is Indian Country in the District of New Mexico.

21. Based on my training and experience, I am aware in most occasions that suspect(s) and or his accomplice(s) often conceal firearms and very rarely destroy them.

I believe the firearm(s) involved in this drive by shooting are concealed in the residence, outer houses or vehicles on the property described in paragraph "20."

22.   Based on the above mentioned facts, known to me concerning this investigation, I believe the residence described paragraph 20 contains evidence of an Assault with a Dangerous Weapon, 18 U.S.C. §§ 1153, 113(a)(3), Assault Resulting in Serious Bodily Injury, 18 U.S.C. §§ 1153, 113 (a)(6) and Discharge of a Firearm during a Crime of Violence, 18 U.S.C. § 924(c), which occurred within the exterior boundaries of the Picuris Pueblo Indian Reservation, County of Taos, State of New Mexico. I believe probable cause exists for the issuance of a search warrant for the residence located at No. 47 Jack Rabbit Hill, Picuris Pueblo, New Mexico. This residence is commonly known as the MANUEL ARCHULETA Residence. I am seeking permission of the court, to enter this residence, outer houses, and any vehicles located at the residence, to seize for processing, the items to be searched for, which believed to be used in commission of a crime are:

(a) A shotgun type firearm, shotgun components, shotgun firearm accessories, shotgun firearm cleaning materials, shotgun firearm cases, shotgun firearm owner manuals and/or any other items used to facilitate the possession, use, maintenance and/or transfer of the shotgun. Document(s) that establish or tend to establish ownership, possession, use, transfer and/or the right to ownership, possession, use and/or transfer of the herein-described item(s), to be seized,

(b) Shotgun ammunition, whether fired or unfired, projectile(s), fragment(s) of projectile(s), ammunition casing(s) whether fired or unfired and/or any other component(s) of ammunition. Document(s) that establish or tend to establish

ownership, possession, use, transfer and/or the right to ownership, possession, use and/or transfer of the, herein-described item(s), to be seized,

(c) As it relates to items in paragraph (a) and (b) above, latent and/or visible print(s), palm print(s) sufficient for laboratory examination from any person(s) located at the herein-described residence to be searched,

(d) Residue(s) apparently deposited by the discharge of the shotgun firearm and/or any explosion(s) and/or any item(s) and/or material(s) that may have said item(s) and/or material(s) on and/or within them,

(e) Documentation of the herein-described residence and the herein-described item(s), to be seized, including measurements of the item(s) to be seized, photography, videography and/or any other means deemed necessary by law enforcement and/or person(s) assisting law enforcement to document the collection of the shotgun.

23. AUSA Novaline Wilson has approved this search warrant.

24. I swear that this information is true and correct to the best of my knowledge and belief.

_____
Peter Lahi
Special Agent
BIA/OJS Northern Pueblos Agency

Subscribed and sworn to before me
This 1ST Day of ~~July~~ AUGUST 2016
_____
United States Magistrate Judge